


**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:                          )     Case No. 17-25335-B-7
                                )
RAJPAL SINGH CHATHA and         )     DC No. NOS-014
TARANJIT KAUR CHATHA,           )
                                )
                                )
                  Debtor(s).    )
_____)


**MEMORANDUM DECISION DENYING MOTION TO TRANSFER
HOTEL TO BANKRUPTCY ESTATE**


I.

Prefatory Comment

Although its origins are generally unknown, there is an old
adage that one should never wrestle with a pig because you both
get dirty and the pig enjoys it.  See
https://quoteinvestigator.com/2017/07/08/pig/.  The court found
this to be particularly appropriate and applicable during oral
argument held on August 30, 2022.  From bloviating lectures to
the court on "basic American jurisprudence" to literal finger-
pointing at the bench to verbally elevated oration, the court had
the great misfortune of witnessing, with regret and
disappointment, the generally belligerent, aggressive, and
disrespectful courtroom demeanor by the Sacramento attorney who
appeared and argued on behalf of Simmons Bank, an Arkansas state-
chartered bank ("Simmons Bank").  These unfortunate traits place
the Sacramento attorney below the standard this court expects
from all attorneys who practice before it.  They also

1  remind the court of the importance of judicial restraint and the

2  need to sometimes be overly-patient with some attorneys.

3     There is another old adage that every dog has its day.  This

4  one is generally attributed to William Shakespeare's *Hamlet*.  <u>See</u>

5  https://stuntdog.wordpress.com/2009/02/27/origin-of-the-saying-ev

6  ery-dog-has-its-day/.  This one applies here as well.  The

7  Sacramento attorney who appeared and argued for Simmons Bank had

8  his day before this court on August 30, 2022.  The attorney is

9  now on notice that similar belligerent, aggressive, and

10  disrespectful courtroom demeanor in another appearance before

11  this court will result in the immediate cessation of the matter

12  before it and an immediate commencement of contempt proceedings.

13     That said, the court now addresses the motion.

14

15

16                        II.
                     <u>Introduction</u>

17     Before the court is the *Trustee's Motion and Memorandum of*

18  *Points and Authorities to Approve Transfer of Texas Hotel to the*

19  *Chapter 7 Estate* filed by Douglas Whatley, in his capacity as the

20  chapter 7 trustee appointed in the above-captioned bankruptcy

21  case.  Debtors Rajpal and Taranjit Chatha filed an opposition to

22  the motion.[1]  Simmons Bank also filed an opposition to the

23  motion.  The chapter 7 trustee filed replies.

24     The court has reviewed the motion, oppositions, replies, and

25

26  _____

27     [1]Numerous individuals share the surname "Chatha."  For
   purposes of clarity, the court will refer to these individuals by
28  their first names.  No disrespect is intended.

                           - 2 -

all related declarations and exhibits.  The court has also
reviewed and takes judicial notice of the docket in the chapter 7
case and the dockets in the related adversary proceedings of
Whatley v. Chatha, et al., Adv. No. 18-02102 ("Whatley AP") and
Westates Holdings, LLC v. Chatha, et al, Adv. No. 17-02205
("Westates AP").  See Fed. R. Evid. 201(c)(1).  This specifically
includes judicial notice of the *First Amended & Restated Company
Agreement of March On Hospitality LLC*, dated June 2, 2015, which
the chapter 7 trustee filed as an additional Exhibit on August 9,
2022.[2]  See Bankr. Docket 283, Ex. 6 at 36-70.  Simmons Bank
concedes the exhibit is the governing operating agreement.  See
Bankr. Docket 291 at 32:4-7 ("In response to this Court's Order
(Docket # 278), the Trustee produced Supplemental Exhibits which
confirm that the operative operating agreement for March On is
the First Amended & Restated Company Agreement of March On
Hospitality LLC dated June 2, 2015 ('MOH Operating Agreement').
Docket #283, pp. 36-70.")).  Simmons Bank also relies on the
exhibit for a number of its arguments in the opposition.  See Id.
at 32:2-33:28.[3]

The court heard oral argument on August 30, 2022.
Appearances were noted on the record.

This memorandum decision supplements the court's statements
made on the record in open court and constitutes the court's

---

[2]References to "Article" throughout this memorandum decision
are references to the provisions of this operating agreement.

[3]The parties' request for judicial notice is also granted.
See Bankr. Dockets 296, 327.

findings of fact and conclusions of law.  See Fed. R. Civ. P.
52(a); Fed. R. Bankr. P. 7052, 9014(c).  To the extent there are
any conflicts between the court's statements on the record and
this memorandum decision, this memorandum decision controls.  See
Playmakers, LLC v. ESPN, Inc., 376 F.3d 894, 896 (9th Cir. 2004).
For the reasons explained below, the motion will be denied.[4]

III.
General Background

The motion before the court concerns a La Quinta Inn and
Suites located at 1503 Breckenridge Road, Mansfield, Texas, and
its related personal property (collectively, the "Hotel").  The
Hotel - and the interest in the entity that owns it - have been
entangled in litigation in California and Texas since almost
immediately after Rajpal and Taranjit filed this chapter 7 case
on August 11, 2017.  Over five years later, this court once again
addresses issues arising out of and related to the Hotel and the
entity that owns it.

As an initial matter, nobody disputes that the Hotel is
currently owned by March On Hospitality, LLC, a Texas Limited
Liability Company ("MOH").  According to the chapter 7 trustee,
the Hotel is MOH's sole asset.  See Bankr. Docket 265 at 6:24-26.

Additionally, nobody disputes that the chapter 7 trustee

---

[4]The evidentiary objections filed by Simmons Bank are
overruled as moot and its motion to strike evidence is denied as
moot.  See Bankr. Docket 317.  The evidentiary objections filed
by the chapter 7 trustee are overruled and the motion to strike
evidence is denied.  See Bankr. Docket 328.

owns a 100% interest in MOH, that the chapter 7 trustee's interest in MOH is property of the bankruptcy estate, that the chapter 7 trustee is the Manager and sole member MOH, or that the chapter 7 trustee controls MOH and its assets through ownership of the 100% interest. Simmons Bank conceded these points in documents it filed earlier in the bankruptcy case and the court acknowledged the concession in an April 1, 2022, order which reads as follows:

> As an initial matter, 'Simmons Bank does not dispute that the 100% membership interests [sic] in [MOH], now owned by [the chapter 7 t]rustee, is property of the bankruptcy estate, nor does Simmons Bank dispute that [the chapter 7 t]rustee, as the managing member of [MOH], controls [MOH].' Docket 223 at 9:20-22; see also Docket 226 at 3:12-13 ('Trustee now owns the 100% membership interest in [MOH], and now controls [MOH.]'). Simmons Bank also concedes that the chapter 7 '[t]rustee is already the Manager of non-debtor [MOH] and, acting in that capacity, is free to continue to operate [MOH] and its assets including the Hotel.' Dockets 223 at 12:19-20, 226 at 3:25-26.

Bankr. Docket 244 at 4:17-5:2. Simmons Bank makes similar concessions in its opposition. See Bankr. Docket 291 at 21:21-22, 28:19-29:4.

On these undisputed facts alone, nothing prevents or prohibits the chapter 7 trustee from causing MOH to sell the Hotel under Texas law. Indeed, the court previously determined as much in the April 1, 2022, order:

> [T]he chapter 7 trustee may: (i) operate the Hotel as a function of his 'sole and exclusive' control and authority over MOH's assets; (ii) control the Hotel's finances as a function of its operation; (iii) determine whether to sell the Hotel; and (iv) sell the Hotel as a function of his 'sole and exclusive' authority to dispose of MOH's assets[.]

- 5 -

Bankr. Docket 244 at 7:2-7.  Simmons Bank again concedes these points in its opposition, the chapter 7 trustee's authority to cause MOH to sell the Hotel in particular.  See Bankr. Docket 291 at 12:4-6, 42:23-43:22.

The chapter 7 trustee has, however, elected to proceed differently.  Rather than cause MOH to sell the Hotel, the chapter 7 trustee requests authorization to use his 100% interest in MOH, and his status as MOH's Manager and sole member, to transfer the Hotel to himself - and thence to the bankruptcy estate - for purposes of selling the Hotel for over $6.3 million dollars under 11 U.S.C. § 363.[5]  To this end, on August 2, 2022, the chapter 7 trustee adopted the following resolution in *Minutes of a Special Meeting of Members & Managers of March On Hospitality LLC, a Limited Liability Company*, which he signed as MOH's Manager and sole member:

> The Chairman then reported that he received an offer
> from a third party to purchase the Hotel.  He intends
> to transfer the Hotel to the Bankruptcy Estate and then
> sell the Hotel, pending approval of the bankruptcy
> court for the Eastern District of California
> ("Bankruptcy Court").  The Trustee will use money
> generated by the operation of the Hotel to pay any
> non-disputed debts owed to unpaid creditors of the
> Company and if this is insufficient, to use sale
> proceeds from the sale of the Hotel to pay any
> non-disputed debts owed to any unpaid creditors of the
> Company.  All remaining funds will be used to pay
> administrative expenses of the Bankruptcy Estate or
> distributed to creditors of the bankruptcy estate in
> the priority of claims set forth in the Bankruptcy
> Code.

---

[5]The sale of the Hotel is the subject of a separate motion also heard on August 30, 2022.  See Bankr. Docket 270.  Simmons Bank also opposes the sale motion.  See Bankr. Docket 303.

Bankr. Docket 283 at 128-29.

Rajpal and Taranjit oppose the transfer of the Hotel to the estate. Notably, their opposition does not provide any argument as to why the Hotel could not be transferred. Instead, it merely speculates as to what might happen if the Hotel is transferred. The opposition, however, is not supported by a declaration or any other admissible evidence and the unsupported and unsubstantiated statements by Rajpal's and Taranjit's attorney in the opposition itself are not evidence of anything, much less any perceived consequences of the transfer. <u>Singh v. INS</u>, 213 F.3d 1050, 1054 n.8 (9th Cir. 2000).

Simmons Bank also opposes the transfer of the Hotel to the estate. It objects to the transfer on the basis that the Hotel is not property of the estate and therefore cannot be sold under 11 U.S.C. § 363. It asserts that the transfer adversely affects a disputed lien it claims on the Hotel notwithstanding that any lien, whatever its extent, would transfer to proceeds from the § 363 sale of the Hotel. It also asserts that the transfer of the Hotel from MOH to the estate violates Texas law and the MOH operating agreement.

## IV.
### Factual and Procedural Background

Rajpal formed Chatha Hospitality LLC, a Texas Limited Liability Company, as the Manager and sole member, in 2007. The entity was later renamed Brightside Hospitality LLC, a Texas Limited Liability Company ("Brightside"). Brightside acquired

- 7 -

the Hotel in 2008.  Brightside's name was changed to MOH during

its 2014 chapter 11 case filed in the Northern District of Texas.

Brightside's chapter 11 case resulted in the confirmation of an

amended chapter 11 plan on June 1, 2015.

Rajpal initially claimed that he transferred his interest in

MOH to Simranjit in 2015 through Brightside's confirmed amended

chapter 11 plan.  The court determined otherwise after a trial in

the Whatley AP.  More precisely, the court determined that Rajpal

sold his interest in MOH to Simranjit in January 2018 and, thus,

Rajpal transferred the interest to Simranjit several months after

Rajpal and Taranjit filed their chapter 7 petition on August 11,

2018.[6]  See Whatley AP Docket 506 at 22:24-23:15.

As to the Hotel, several months before Rajpal actually sold

his interest in MOH to Simranjit, Simranjit apparently

transferred it to an entity he owned, Summerfest Hospitality LLC,

a Texas Limited Liability Company ("Summerfest"), pursuant to an

August 7, 2017, General Warranty Deed which he purported to sign

as MOH's Manager.  Immediately thereafter, Simranjit caused

Summerfest to obtain a $2.5 million dollar loan from Simmons

---

[6]In addition to other overwhelming evidence, Simranjit
admitted in his direct testimony declaration that Rajpal did not
sell him the interest in MOH until January 2018.  More precisely,
Simranjit admitted that the documents which transferred Rajpal's
interest in MOH to him were prepared at his request by Texas
attorney Karen Schroeder in December 2017 and were signed in
early January 2018.  See *Direct Testimony Declaration of
Simranjit Chatha [Rule 9017]* signed and dated "July __, 2021," at
¶¶ 30, 31.  Rajpal corroborated Simranjit's admissions in his own
direct testimony declaration.  See *Direct Testimony Declaration
of Rajpal Chatha [Rule 9017]* signed and dated "July __, 2021, at
¶ 12.

- 8 -

Bank's predecessor and encumbered the Hotel with a deed of trust to secure the loan. Loan proceeds were used to pay approximately $2 million dollars of then existing debt for which the Hotel then served as collateral.

Transfers of the MOH interest and the Hotel were addressed in the Whatley AP. The court entered a decision in the Whatley AP on August 9, 2021.[7] Among other things, the court avoided the transfer of Rajpal's interest in MOH to Simranjit under 11 U.S.C. § 549 (Whatley AP Docket 506 at ¶ 51, 508 at 1:27-2:4), ordered the chapter 7 trustee to recover Rajpal's interest in MOH and its assets from Simranjit (Whatley AP Docket 506 at ¶ 55, 508 at 2:4-9), ordered the Chapter 7 trustee to recover the Hotel from Summerfest for the benefit of MOH (Whatley AP Docket 506 at ¶ 56, 508 at 2:26-3:6), and invalidated the August 7, 2017, General Warranty Deed (Whatley AP Docket 506 at ¶¶ 52-53, 508 at 2:26-3:6).[8]

---

[7]The entirety of the decision in the Whatley AP includes the following: (1) a *Findings of Fact and Conclusions of Law After Trial*, Whatley AP Docket 506; an *Order on Findings of Fact and Conclusions of Law After Trial*, Whatley AP Docket 508; and (3) a *Judgment*, Whatley AP Docket 510.

[8]Because it was not a party to the action, as it reminds everyone *ad nauseam*, Simmons Bank is critical of the court for invalidating the August 7, 2017, General Warranty Deed on the basis that Rajpal did not transfer his interest in MOH to Simranjit until January 2018 and therefore Simranjit lacked authority to sign the document as MOH's Manager on August 7, 2017. At the same time, Simmons Bank recognizes that the MOH interest transferred from Rajpal to Simranjit postpetition inasmuch as it acknowledges that avoidance and recovery were appropriate but, at least in its view, may have gone too far with regard to the General Warranty Deed. <u>See e.g.</u>, Bankr. Docket 291 at 44 & n.13 ("The most that should have happened [under § 549

1    In any event, shortly after the court entered its decision

2    in the Whatley AP, the chapter 7 trustee recovered the interest

3    in MOH from Simranjit.  And pursuant to a *Settlement Agreement*

4    which the court approved on November 3, 2021, the chapter 7

5    trustee caused MOH to recover the Hotel from Summerfest.  See

6    Bankr. Dockets 148, 151 at Ex. 1,164, 166.  With regard to the

7    latter, whether through the *Settlement Agreement* or recovery in

8    the Whatley AP, the Hotel is now owned by MOH.

9

10                            V.

11                  Jurisdiction and Venue

12    The court has jurisdiction over this matter pursuant to 28

13    U.S.C. §§ 157 and 1334.  This is a core proceeding under 11

14    _____

15    and 550] was for the Court to order Rajpal's 100% membership
      interest in March On be returned to the estate.").

16    Simmons Bank's criticism is also somewhat disingenuous.
      Southwest Bank apparently merged into Simmons Bank in or around

17    February 2018.  See Bankr. Docket 294 at 2:5-7.  Sometime in late
      2018 or early 2019 Southwest Bank, or perhaps Simmons Bank at the

18    time, produced Hotel and Summerfest loan documents, the General
      Warranty Deed included, in response to a subpoena.  See Whatley

19    AP Docket 30 at ¶¶ 25, 29.  On notice that significant real
      property it claims is collateral for a $2.5 million dollar loan

20    was involved in a bankruptcy case and/or litigation in a
      bankruptcy court, Simmons Bank apparently did nothing to

21    investigate the proceedings to which the subpoena related.  By
      its overwhelmingly aggressive stance during oral argument that

22    the subpoena raised no red flags, Simmons Bank appeared to
      confirm this.  Doing nothing to investigate the subpoena seems to

23    run contrary to the deed of trust pursuant to which Simmons Bank
      claims a lien on the Hotel- a deed of trust which Simmons Bank no

24    doubt prepared or provided in the loan process.  The deed of
      trust contemplates that Simmons Bank will take all necessary

25    steps to protect its interest in the Hotel, including the
      prosecution or defense of litigation and the settlement or

26    compromise of claims made against the interest claimed in the
      Hotel.  See Bankr. Docket 298 at Ex. 3, ¶ 3.2(j).

27

28

                              - 10 -

1    U.S.C. §§ 157(b)(2)(A), (M), and (0).  The court also has full

2    constitutional and statutory authority to determine the extent to

3    which a chapter 7 trustee may use a 100% interest in a debtor's

4    nondebtor limited liability company under 11 U.S.C. § 363(b) and

5    the operating agreement to exercise control over the nondebtor

6    entity and its assets.  Ronald Tutor and Zelus, LLC v. Durkin (In

7    re R2D2, LLC), 591 Fed.Appx. 539 (9th Cir. 2015).

8        Venue is proper under 28 U.S.C. §§ 1408 and 1409.

9

10                          VI.
11                        Analysis

12       Because an entity and its owner(s) are separate and

13   distinct, ownership of an interest in an entity is not ownership

14   of the entity's assets.  Dole Food Co. v. Patrickson, 538 U.S.

15   468, 474-75 (2003); U.S. v. Bennett, 621 F.3d 1136-37 (9th Cir.

16   2010).  The same applies under Texas law.  See Tex. Bus. & Org.

17   § 101.106(b); RLI Ins. Co. v. Caliente Oil, Inc., 469 F. Supp. 3d

18   729, 739-40 (W.D. Tex. 2020); Pajooh v. Royal Western Invest.

19   LLC, Series E, 518 S.W.3d 557, 565 (2017).  That means when an

20   individual who owns an interest in an entity files a bankruptcy

21   petition only the interest in the entity, and not the entity's

22   assets, become part of the individual's bankruptcy estate under

23   11 U.S.C. § 541(a)(1).  Fursman v. Ulrich (In re First

24   Protection, Inc.), 440 B.R. 821, 830 (9th Cir. BAP 2010); In re

25   Shapow, 599 B.R. 51, 71 (Bankr. C.D. Cal. 2019); see also In re

26   DeVries, 2014 WL 4294540 at *12 (Bankr. N.D. Tex. Aug. 27, 2014).

27

28       Applying the foregoing principles here leads to the

                            - 11 -

unremarkable conclusion that the chapter 7 trustee, as the

successor to Rajpal's interest in MOH, and MOH, a Texas limited

liability company, are separate and distinct.  That distinction

means the chapter 7 trustee owns the interest in MOH but not the

Hotel.  That distinction also means the interest in MOH that the

chapter 7 trustee owns is property of the bankruptcy estate and

the Hotel is not.[9]  In reaching these conclusions, the court

rejects the chapter 7 trustee's argument that the Hotel is

already property of the estate for three reasons.

First, the chapter 7 trustee acknowledges that the Hotel is

not currently property of the estate.  In the reply to Simmons

Bank's opposition to the sale motion, the chapter 7 trustee

states that "[o]nce the Hotel is property of the Estate, the

Trustee intends to offer adequate protection to Simmons[.]"

Bankr. Docket 334 at 4:17-18.  The inference is that adequate

protection was not previously offered because the Hotel is not

---

[9]The court does not need a adversary proceeding to conclude
that the Hotel is not property of the estate.  Whether property
is estate property may be determined in a contested matter when
the determination involves undisputed facts which the parties
have had multiple opportunities to address and the determination
results in no prejudice.  See Starky v. Birdsell (In re Starky),
522 B.R. 220, 228-29 (9th Cir. BAP 2014).  The determination here
is based on the undisputed fact that the Hotel is owned by a
nondebtor entity.  In addition to the present motion, the issue
has been raised and argued four times.  See also DCN NOS-12, DCN
NOS-13, and DCN BJ-1.  The chapter 7 trustee raises the issue in
the present motion and also notes that the court will
dispositively decide the issue in the context of the present
motion.  See Bankr. Docket 334 at 5:26-28 ("The outcome of the
Transfer Motion will determine dispositively, whether the Hotel is
property of the Estate[.]").  The court's decision obviously
benefits Simmons Bank.  The court is therefore hard-pressed to
find that either party is prejudiced under these circumstances.

property of the estate and adequate protection is necessary only when the Hotel becomes estate property.  See 11 U.S.C. § 363(e) (adequate protection required for use or sale of property of the estate).

Second, if the Hotel was already property of the estate there would be no need for the chapter 7 trustee to request authorization to use his 100% interest in MOH to transfer it to the estate.  Viewed in this context, the present motion is either a request for an advisory opinion or a so-called "comfort order." See Bankr. Docket 265 at 8:13 ("This is a situation where it is better to ask permission rather than forgiveness.").  The former are constitutionally prohibited.  See Coalition for a Healthy California v. F.C.C., 87 F.3d 383, 386 (9th Cir. 1996).  And this court does not issue the latter.  See e.g., In re NIR West Coast, Inc., dba Northern California Roofing, 2021 WL 27407 at *2 (Bankr. E.D. Cal. Jan. 4, 2021); see also Bankr. Docket 229.

Third, the chapter 7 trustee's reliance on 11 U.S.C. § 541(a)(3) to capture the Hotel as estate property through the Whatley AP is misplaced.  See Docket 265 at 7:15-17.  Section 541(a)(3) provides that property recovered by the estate through a transfer avoided under 11 U.S.C. § 549(a) becomes property of the estate.  See 11 U.S.C. § 541(a)(3).  The flaw in the chapter 7 trustee's analysis is the assumption that the court ordered the Hotel recovered by the estate or for the estate's benefit in the Whatley AP.  It did not.  The court ordered the chapter 7 trustee to recover the Hotel for the benefit of MOH.

- 13 -

The court addressed the recovery of the Hotel in paragraph 56 of the findings of fact and conclusions of law which states that "[t]o the extent the Hotel is in the possession, custody, or control of Summerfest, or Summerfest exerts dominion over the Hotel, plaintiff, in his capacity as the trustee appointed in the parent chapter 7 case, will recover the Hotel from Summerfest[.]" Whatley AP Docket 506 at 25:2-6.  But paragraph 56 of the findings of fact and conclusions of law must be read in conjunction with the order entered on the findings of fact and conclusions of law which, with regard to recovery of the Hotel, expressly states that "plaintiff, *on Brightside's behalf*, will recover the Hotel from Summerfest[.]"  Whatley AP Docket 508 at 3:2-3 (emphasis added).

Equally misplaced is the chapter 7 trustee's reliance on paragraph 55 of the findings of fact and conclusions of law which states that "[p]laintiff, in his capacity as the trustee appointed in the parent chapter 7 case, will recover Rajpal's interest in Brightside *and its assets* . . . from Simranjit[.]" Whatley AP Docket 506 at 24:15-17.  Not only are paragraph 56 of the findings of fact and conclusions of law and the corresponding order more specific as to the recovery of the Hotel, but the Hotel could not be recovered from Simranjit because Simranjit never owned it.  Nor, for that matter, did Rajpal ever own it. And to the extent the recovery is of the interest and its assets, the assets recoverable from Simranjit can only be understood to mean those associated with the MOH interest, *i.e.*, the managerial

- 14 -

and economic rights associated with the interest which are assets of the bankruptcy estate.

In any case, this all may be largely academic because at the end of the day the chapter 7 trustee did not appeal any aspect of the decision entered in the Whatley AP. In fact, he effectively ratified the recovery of the Hotel for MOH's benefit as was ordered by implementing the recovery through the *Settlement Agreement* pursuant to which Summerfest transferred the Hotel to MOH. See Bankr. Docket 265 at 5:27-6:2 ("In compliance with the Court's decision in the Adversary Proceeding, on or about August 26, 2021, Simranjit Chatha executed documents whereby Summerfest transferred title to the Texas Hotel to March On.").

The point of all this is that MOH owns the Hotel. And while the chapter 7 trustee owns 100% of the interest in MOH, ownership of that interest does not give the estate ownership of assets that MOH owns- the Hotel in particular. For these reasons, the court reiterates its conclusion stated hereinabove that the Hotel is not property of the estate in the bankruptcy case. That means there is no basis to sell the Hotel under 11 U.S.C. § 363 which limits the chapter 7 trustee's ability to sell property to property of the estate. See 11 U.S.C. § 363(b). And without a basis to sell the Hotel under § 363, the reason for transferring the Hotel to the estate vanishes.

But the analysis does not end there because the chapter 7 trustee seeks to make the Hotel estate property under 11 U.S.C. § 541(a)(7) through the transfer of the Hotel to himself and thence

the estate.  See Bankr. Docket 334 at 5:21-23 (citing §

547(a)(7)); see also Id. at 4:17 ("Once the Hotel is property of

the estate[.]").  The fundamental question then is whether the

chapter 7 trustee can use the 100% interest in MOH, and his

status as MOH's Manager and sole member, to acquire the Hotel for

the estate through the transfer.  Although the concept is not

implausible, the requirements to do so are not satisfied here.

By virtue of his 100% interest in the entity, the chapter 7

trustee has complete control over MOH and its assets.  Fursman,

440 B.R. at 830.  Indeed, as the district court explained in

Schwartzer v. Cleveland (In re Cleveland), 519 B.R. 304 (D. Nev.

2014):

> Numerous bankruptcy courts have held, and the Court
> agrees, that where a debtor has a membership interest
> in a single-member LLC and files a petition for
> bankruptcy under the Chapter 7, the Chapter 7 trustee
> succeeds to all of the debtor's rights, including the
> right to control that entity, and a trustee need not
> take any further action to comply with state law before
> exercising such control.

Id. at 306.  As noted above, Simmons Bank does not dispute these

points.

There is also authority for the proposition that a chapter 7

trustee who controls a debtor's nondebtor limited liability

company through the ownership of a 100% interest in the entity

may use the interest to transfer the entity's assets to the

estate.  For example, in In re Albright, 291 B.R. 538 (Bankr. D.

Col. 2003), the bankruptcy court concluded that a chapter 7

trustee could use his 100% interest as the Manager and sole

member of the debtor's nondebtor entity to sell the entity's

- 16 -

property and distribute the net proceeds or, alternatively, distribute the entity's property to the bankruptcy estate and, in turn, liquidate the property himself. Id. at 541-42.

The district court reached a similar conclusion in Cleveland which arose in the context of the chapter 7 trustee's objection to the debtors' claim of an exemption in two limited liability companies owned 100% by the debtors. Although the bankruptcy court ruled that the debtors' membership and managerial interest in their nondebtor limited liability companies were property of the estate, it also concluded that "the trustee has no right to sell or otherwise take ownership of any assets of [the limited liability] companies[.]" Cleveland, 519 B.R. at 306. The chapter 7 trustee appealed. Id. On appeal, the Nevada district court reversed and remanded, concluding that "the Bankruptcy Court erred in holding that [the chapter 7 trustee] 'has no right to sell or otherwise take ownership of any assets of '[the debtors]' LLCs. Appellant, as the trustee of the bankruptcy estate, has the right to sell or otherwise take ownership of any assets of [the debtors'] LLCs.". Id. at 307.

Albright and Cleveland are not helpful here. And they are not persuasive.

The problem with Albright is that the distribution of property owned by the debtor's nondebtor entity so that the chapter 7 trustee could sell it in the individual's bankruptcy case suggested as an alternative to a distribution of net proceeds from a sale of the property by the debtor's nondebtor

- 17 -

entity is referenced in the context of a "dissolution."  In other words, distribution could only occur through a process that complied with state law.  As discussed below, this is not the case here.

The bigger problem with <u>Albright</u> and <u>Cleveland</u> is that neither considered nor analyzed the respective trustee's authority to control the debtors' nondebtor entities or their assets under the applicable operating agreements.  Review of an operating agreement is critical because even if a trustee owns a 100% interest in a debtor's nondebtor entity the extent of the trustee's authority over the entity and its assets is defined and limited by the operating agreement.  <u>Davis v. Ogletree (In re Ogletree)</u>, 2020 WL 6557434 at *4 (9th Cir. BAP Nov. 4, 2020) ("But the rights to which the trustee succeeds are defined and limited by the LLC's operating agreement.  A chapter 7 trustee would step into [the debtor's] shoes and assume only the rights she had under the operating agreement."); <u>see also</u> <u>DeVries</u>, 2014 WL 4294540 at *12 ("Thus, when a member of a limited liability company files for bankruptcy, his or her interest in the LLC, *and any rights he or she has under the LLC's operating agreement*, become property of the estate." (Emphasis added)).  The Ninth Circuit's decision in <u>In re R2D2</u>, <u>supra</u>, illustrates this point.

In <u>R2D2</u>, the Ninth Circuit concluded that a bankruptcy court has full constitutional and statutory authority to determine and delineate the extent to which a bankruptcy trustee vested with a 100% interest in the debtor's nondebtor limited liability company

may use the interest as property of the estate under 11 U.S.C. §
363 consistent with the entity's operating agreement.  R2D2, 591
Fed.Appx. at 542.  The Ninth Circuit also concluded that the
bankruptcy court properly looked to the entity's operating
agreement to determine whether the chapter 11 trustee who owned
the 100% interest in the debtor's limited liability company could
use the interest to exercise control over the entity and its
assets by removing the manager and placing the entity into its
own bankruptcy case.  Id.

     Article 6.01 gives the chapter 7 trustee, as Manager, "sole
and exclusive" authority over MOH and its assets.  In an attempt
to reconcile the transfer of the Hotel to the estate with that
authority, the chapter 7 trustee asserts that the transfer is
merely a transfer of the Hotel from one entity, i.e., MOH, to
another entity, i.e., the bankruptcy estate, under Article
6.01(f).  See Bankr. Docket 326 at 4:1-8, 9:2-6.  It is true that
Article 6.01(f) gives the chapter 7 trustee, as Manager,
authority to acquire, utilize, and dispose of MOH's assets.  And
it is also true that under a common understanding of the term a
disposition could include a transfer.  But that is not what is
happening here.

     The transaction here is a transfer of property owned by MOH
by the chapter 7 trustee, acting as MOH's Manager, to the chapter
7 trustee, as MOH's sole member.  Viewed in this context the
transfer more closely resembles, and is more persuasively
interpreted as, an in kind distribution of the entity's property

- 19 -

by the Manager to a member. The attorney for the chapter 7
trustee agreed with this characterization during oral argument.
It is also noteworthy that Article 5.02(b) of the MOH operating
agreement describes the transaction whereby the Manager provides
members with the entity's property as an in kind "Distribution."[10]
See also Tex. Bus. & Org. § 101.203 (describing cash or other
company assets that a member receives from the limited liability
company as distributions). But again, the analysis does not end
there.

Although Article 5.02(b) and Texas law permit the Manager to
make in kind distributions of the entity's property to members,
the court must examine that authority under Article 16 when an in
kind distribution occurs in the context of an "Event Requiring
Termination." Article 16.01(a) defines the term to include "the
execution of an instrument approving the termination of the
Company by a Simple Majority of the Members[.]"

Upon the occurrence of an "Event Requiring Termination,"
Article 16.04 requires the Manager, acting as liquidator, to
"proceed diligently" and begin the process of winding up. That
process implicates the distribution provisions of the Texas
Business and Organizations Code, id., and (paraphrased) describes
the following procedural "steps to be accomplished[:]"

---

[10]Article 5.02(b) is consistent with Texas law. Generally,
distributions from a limited liability company to its members are
limited to cash. See Tex. Bus. & Org. § 101.202. However, that
limitation is waivable which means an operating agreement may
provide otherwise and permit in-kind distributions of property to
members. See Tex. Bus. & Org. §§ 101.054(a)(2), 101.052(c).

- 20 -

(a)   cause a proper accounting to be made by a recognized CPA firm of the entity's assets, liabilities, and operations through the last day of the month in which the termination event occurs, Article 16.04(a);

(b)   cause the notice required by Tex. Bus. & Org. § 11.052 to be delivered to each known claimant against the company, Article 16.04(b);

(c)   pay, satisfy, or discharge all of the entity's debts, liabilities and obligations or otherwise make adequate provision for the payment and discharge thereof, Article 16.04(c); and

(d)   distribute the entity's remaining assets to the members, Article 16.04(d):

    i.   by selling any or all of the entity's property, Article 16.04(d)(4)(i);

    ii.   adjusting members' capital accounts for unsold property, Article 16.04(d)(4)(ii); and

    iii.   distributing company property to members in accordance with positive capital account balances, Article 16.04(d)(4)(iii).

The resolution adopted in the special meeting minutes of August 2, 2022, meets the definition of an "Event Requiring Termination" under Article 16.01(a).  Signed by the chapter 7 trustee as Manager and sole member, the resolution is an executed instrument that effectively approves the termination of MOH.  It strips MOH of the Hotel and, thus, of its sole asset.  It provides for final payment to MOH's creditors.  And except for the passive collection of revenue not sold with the Hotel as was explained during oral argument, which itself is part of the wind up process under Tex. Bus. & Org. § 11.052(4), it renders MOH functionally and operationally defunct once the § 363 sale closes.  In short, there is nothing more for MOH to do – or that

it can do - operationally after the Hotel is transferred, sold, and the sale closes as contemplated by the resolution and explained during oral argument.

The resolution in the special meeting minutes as a terminating event also triggers the obligations imposed under Article 16.04(a)-(d) and implicates Texas law applicable to the wind up and distribution process. The problem is, to the extent the chapter 7 trustee proposes to make an in kind distribution of the Hotel under these circumstances as Article 16.04(d) contemplates, the chapter 7 trustee has not obtained the accounting required by Article 16.04(a), demonstrated that the statutorily-required notice required by Article 16.04(b) has been given, or satisfied or discharged - or made adequate provision for the satisfaction or discharge of - MOH's liabilities as required by Article 16.04(c). The timing provisions of distributions under the Texas Business and Organizations Code, made applicable to the Article 16.04(c) and (d) obligations through Article 16.04, is also of special concern.

Although disputed and perhaps even contingent, the lien that Simmons Bank claims on the Hotel is a liability as the term is broadly construed and applied to domestic entities under Texas law. See Burnett v. Chase Oil & Gas, Inc., 700 S.W.3d 737, 745 (Tex.App. 1985); Hurt v. Federal National Mortgage Assn. (In re Homeowners Mortgage and Equity, Inc.), 354 F.3d 372, 375-76 (5th Cir. 2003). Texas law provides that only "*after* a domestic entity has discharged, or made adequate provision for the

discharge of, all of its liabilities and obligations, the domestic entity shall distribute the remainder of its property, in cash or in kind, to the domestic entity's owners according to their respective rights and interests." Tex. Bus. & Org. § 11.053(c) (emphasis added). That is not what occurs here.

To the extent the lien that Simmons Bank claims on the Hotel is paid from or attaches to proceeds from a § 363 sale, and to the extent that a § 363 sale can occur only after the Hotel is transferred from MOH to the estate, the process here is in reverse of what Texas law and the MOH operating agreement require. In other words, because the Hotel must be transferred to the estate before it can be sold under § 363 and because Simmons Bank is either paid from or its lien attaches to sale proceeds, the in kind distribution of the Hotel that occurs as a result of the transfer precedes rather than follows the discharge of liabilities or an adequate provision for the discharge of liabilities. Under these circumstances, the court can not authorize the chapter 7 trustee to use his 100% interest in MOH, and his status as the Manager and sole member of MOH, to transfer the Hotel to the bankruptcy estate for the purpose of selling the Hotel under 11 U.S.C. § 363.[11]

---

[11]The attorney who argued for the chapter 7 trustee mentioned during oral argument the possibility of simply amending the MOH operating agreement to permit the Hotel to be transferred to the estate. Problem is, to the extent chapter 7 trustee needs § 363 sale proceeds to pay - or as a substitute for - the lien that Simmons Bank claims on the Hotel and to the extent a § 363 sale can only occur after a transfer the Hotel would still be distributed before - rather than after - liabilities are

- 23 -

## VII.

### Conclusion

For all the foregoing reasons, the chapter 7 trustee's motion will be DENIED.

A separate order will issue.

Dated:  September 6, 2022.

UNITED STATES BANKRUPTCY JUDGE

---

discharged or there is an adequate provision for the discharge of liabilities.  And under those circumstances, and amendment would not pass muster.

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

W. Steven Shumway
3400 Douglas Blvd., Suite 250
Roseville CA 95661

Christopher D Hughes
621 Capitol Mall #2500
Sacramento CA 95814

Walter R. Dahl
2304 N St
Sacramento CA 95816-5716

Caitlin C. Conklin
1 Newark Center, 10th Fl
Newark NJ 07102

Gregory J. Hughes
2370 W. Highway 89A, Ste. 11-470
Sedona AZ 86336